Patrice D. WILLIAMS, Plaintiff,

v.

ALABAMA STATE UNIVERSITY; Board
of Trustees of Alabama State University;
T. Clifford Bibb; Roosevelt Steptoe;
Alma S. Freeman, Defendants.

No. CV–94–A–434–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 12, 1994.

Rocco Calamusa, Jr., Gordon, Silberman,
Wiggins & Childs, Birmingham, AL, for
plaintiff Patrice D. Williams.

Solomon S. Seay, Jr., Tyrone Carlton Means, Kenneth Lamar Thomas, Thomas, Means & Gillis, P.C., Montgomery, AL, for defendants Ala. State University, Bd. of Trustees of Ala. State University, T. Clifford Bibb, individually and in his official capacity, Dr. Roosevelt Steptoe, individually and in his official capacity, Dr. Alma S. Freeman, individually and in her official capacity.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is now before the court on the Motion to Dismiss filed by Alabama State University ("ASU"), the Board of Trustees for Alabama State University ("Board of Trustees"), T. Clifford Bibb ("Bibb"), Dr. Roosevelt Steptoe ("Steptoe"), and Dr. Alma S. Freeman ("Freeman") (collectively "Defendants") on August 2, 1994.

On April 13, 1994, Patrice D. Williams ("Williams"), filed this action against the Defendants under 42 U.S.C. § 1983 alleging violations of her First and Fourteenth Amendment rights. Specifically, Williams alleges that after she criticized a textbook written by Bibb and instigated a debate concerning major errors in the book and its appropriateness as a teaching tool, the tenure committee, of which Bibb was the chairman, denied Williams' application for a promotion and tenure. Williams seeks declaratory and injunctive relief, including reinstatement, and both punitive and compensatory damages. Williams also seeks costs, attorneys' fees and expenses.

The Defendants contend that Williams' complaint should be dismissed for the following reasons: (1) the complaint fails to state a claim upon which relief can be granted; (2) the complaint is due to be dismissed as to ASU because ASU is not a natural entity and acts only through its duly appointed Board of Trustee members pursuant to Alabama law; (3) the complaint fails because Defendants are absolutely immune under the 11th Amendment; (4) the complaint fails because the Board of Trustees and the individual defendants in their official capacities are ab-solutely immune under Article I, Section 14 of the Constitution of Alabama; (5) the complaint fails under the "heightened specificity" pleading standard; and (6) dismissal is appropriate because Defendants are protected by qualified immunity.

Although the court concludes that Defendants are correct in several of their arguments and thus entitled to dismissal, the court also finds that Williams is entitled to amend her complaint to correct some of the deficiencies. Accordingly, the court will address each of Defendants' contentions in turn. For the reasons stated below, the court finds that Defendants' Motion to Dismiss is due to be GRANTED in part and DENIED in part.

### II. FACTS

The complaint alleges the following facts:

ASU is an educational institution located in Montgomery, Alabama. ASU receives state and federal funds and operates as a governmental entity. At all times relevant to this suit, Steptoe was ASU's Vice President for Academic Affairs, and Freeman was Dean of ASU's University College. Bibb served as the Chair of the Department of Advancement Studies at ASU and as the Chair of the Tenure Committee.

ASU hired Williams in 1980 as an instructor of English for the Department of Advancement Studies of University College and assigned her to the writing laboratory. ASU employed Williams under a temporary contract which ASU renewed every year for the next four years. In 1984, Williams became a probationary employee, and ASU gave her a probationary contract. In 1986, Williams took a two year leave of absence in order to pursue her doctorate. In 1988, ASU employed Williams as an instructor of English for the Department of Advancement Studies of University College. Williams had a probationary contract with ASU.

In 1990, Bibb and other members of the faculty authored a grammar textbook. In addition to being the author of this text, Bibb was also the editor of the text. Williams alleges that this textbook contained numerous substantive grammatical mistakes.

Williams alleges that she expressed her concerns about the textbook to Bibb. Williams also alleges that she criticized the book and instigated debate concerning the major errors in the book and the appropriateness of using the text as a teaching tool. Williams alleges that after she began to complain about this textbook and other ASU policies and procedures, Defendants reduced her hours.

ASU procedures provide that a professor may apply for tenure after six years with ASU. If tenure is denied, ASU offers the professor a temporary employment contract for the next year and dismisses the professor at the end of that contract.

In 1990, Williams contends that she requested and applied for a promotion to the position of Assistant Professor and for tenure. Bibb was the Chairperson of the Tenure Committee at this time. Williams alleges that she withdrew her request for tenure after the Defendants allegedly determined that it was premature. Defendants denied Williams' request for promotion to Assistant Professor citing "procedural and substantive evaluation reasons" as the reason for the denial.

In 1991, Bibb's textbook was used by ASU. This made the textbook a mandatory purchase for all students. Williams alleges that she raised objections to this, because she had reservations about the textbook which still had numerous mistakes and grammatical errors.

Williams again requested and applied for both promotion to Assistant Professor and tenure in 1991. In May 1992, Defendants promoted Williams to the position of Assistant Professor and denied her request for tenure. Bibb, Freeman, and Steptoe authorized and approved the denial of tenure to Williams. Williams contends that after Defendants denied of her tenure request, they did not allow her to work at ASU during the Summer of 1993. Williams alleges that as a result of the denial of her tenure request she worked at ASU under a temporary contract until May 1993 when she received a termination letter. Steptoe signed this termination letter.

Williams contends that Defendants denied her tenure request because of her criticism of the grammar textbook written by Bibb and because of her criticism and questioning of other University policies and procedures. Williams alleges that she was qualified to receive tenure. In fact, Williams contends that she was more qualified for tenure than other employees to whom Defendants granted tenure.

Williams contends that the conduct of the Defendants has caused her to suffer financial and economic hardship. She alleges that in addition to loss of employment Defendants caused her humiliation, embarrassment and loss of standing in the community.

## III. STANDARD OF REVIEW

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) (citation omitted) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

## IV. DISCUSSION

### A. 11th Amendment Immunity

Defendants contend that the Eleventh Amendment provides immunity from this type of suit to ASU, the Board of Trustees and each of the individual defendants to the extent that they are sued in their official capacities. In response to these arguments, Williams appears to concede that the Eleventh Amendment bars her suit against ASU.

Williams argues that the Eleventh Amendment does not bar suits for equitable relief against state officials in their official capacity. Williams argues that she has sued Bibb, Steptoe and Freeman in their official capacities. Furthermore, Williams urges the court to read her complaint as bringing an action against the Board of Trustee members and the other named defendants in their official capacities for injunctive relief. Thus, she contends the Eleventh Amendment does not bar her suit.

> The Eleventh Amendment provides that [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI. The Eleventh Amendment also proscribes suits by citizens against their own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). It is well established that the states and their agencies are immune from suit for monetary damages. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Additionally, in *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the Supreme Court held that actions for injunctive relief against a state or its instrumentalities were not an exception to the Eleventh Amendment bar. In fact, the Supreme Court has explained that the Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity.[1] *See, Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).

■ The Eleventh Amendment does not insulate state officials acting in their official capacities from suit for prospective injunctive relief to remedy violations of federal constitutional law. *See, Edelman,* 415 U.S. at 664–71, 94 S.Ct. at 1356–60; *Scheuer v. Rhodes,* 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1687–88, 40 L.Ed.2d 90 (1974); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). In such cases, it is the individual and not the state which is being sued, and when a state official acts unconstitutionally, he is stripped of his official or representative character and Eleventh Amendment protection. *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. at 453. Moreover, the Eleventh Amendment does not bar monetary relief, including costs, which is ancillary to the prospective injunctive relief. *Kentucky v. Graham,* 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985).

■ However, in cases where the state official is only a nominal defendant in a suit for damages, and the state is the true defendant because the plaintiff is "seeking to impose a liability which must be paid from public funds in the state treasury," the Eleventh Amendment remains as a bar. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1356. This rule applies whether the plaintiff brings an action for damages against a state, a state agency or instrumentality, or a state official. *Id.* Thus, the Eleventh Amendment bars suits for damages against state officials acting in their official capacity when the state is the real party in interest. *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908.

A court faced with a claim of Eleventh Amendment immunity must first determine whether the plaintiff is suing the state. This often involves deciding whether the entity raising the defense can be considered an "agency or instrumentality" of the state. State law guides this determination. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981).[2]

---

1. Williams does not argue that this case is of the kind in which such exceptions apply, and consequently, the court assumes for purposes of its analysis that none of the exceptions to a state's Eleventh Amendment immunity apply here.

2. Decisions of the Fifth Circuit prior to October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1210 (11th Cir.1981).

## 1. ASU

In the Eleventh Circuit, courts applying Eleventh Amendment immunity have determined that under Alabama law universities are agencies or instrumentalities of the state. *See, e.g., Harden v. Adams,* 760 F.2d 1158, 1163 (11th Cir.1985) (Eleventh Amendment bars suit under 42 U.S.C. § 1983 against Troy State University); *Davis v. Alabama State Univ.,* 613 F.Supp. 134, 139–140 (M.D.Ala.1985) (Eleventh Amendment protects Alabama State University from former employee's § 1983 suit). These cases compel the court to find that ASU is an agency or instrumentality of the state. As previously discussed, the Eleventh Amendment prohibits federal courts from allowing suits brought by citizens against a state and its agencies or instrumentalities.

Accordingly, it is the opinion of the court that ASU is due to be dismissed from this action. In light of the court's finding that the claims against ASU are barred by the Eleventh Amendment, the court does not reach Defendants' arguments that ASU is not a natural entity and that the Alabama Constitution grants ASU absolute immunity from suit.

## 2. Board of Trustees

In the Eleventh Circuit, courts applying Eleventh Amendment immunity have determined that under Alabama law the boards of trustees are agencies or instrumentalities of the state. *See, e.g., Harden v. Adams,* 760 F.2d 1158, 1163–64 (11th Cir.1985) (Eleventh Amendment bars suit under 42 U.S.C. § 1983 against Troy State University's Board of Trustees); *Davis v. Alabama State Univ.,* 613 F.Supp. 134, 139–140 (M.D.Ala.1985) (Eleventh Amendment protects Alabama State University Board of Trustees from former employee's § 1983 suit). In light of these cases, it is clear that the Eleventh Amendment proscribes suits brought by citizens against the boards of trustees of universities.

Williams sues the Board of Trustees of ASU as an entity. She does not name the individual members of the Board of Trustees in their official capacities. Williams' argument that the court can and should read her complaint as a suit against the individual

members of the Board of Trustees in their official capacities must fail in light of Eleventh Circuit precedent. The Eleventh Circuit has repeatedly held that even though the Eleventh Amendment does not bar suits against state officials in their official capacities for injunctive relief, the Eleventh Amendment does bar suits against the state entity of which the state official is employed. *See, e.g., Stevens v. Gay,* 864 F.2d 113, 114–15 (11th Cir.1989) (Eleventh Amendment bars suits against a State and its Board of Corrections even though officials of the Board could have been sued for prospective injunctive relief.); *United States v. State of Alabama,* 791 F.2d 1450, 1457 (11th Cir.1986) (Eleventh Amendment barred suit against the State Board of Education, but not against the individual members).

Accordingly, it is the opinion of the court that the Board of Trustees is due to be dismissed from this action. In light of the court's finding that the claims against Board of Trustees are barred by the Eleventh Amendment, the court does not reach Defendants' argument that the Alabama Constitution grants the Board of Trustees absolute immunity from suit.

## 3. Bibb, Steptoe, and Freeman

Williams sues Bibb, Steptoe, and Freeman in their official capacities as well as in their individual capacities. Defendants do not argue that these individuals are entitled to Eleventh Amendment immunity from injunctive relief in their official capacities. To the extent that Williams' suit seeks prospective injunctive relief from Bibb, Steptoe and Freeman in their official capacities, the Eleventh Amendment is not a bar. *See, Edelman,* 415 U.S. at 664–71, 94 S.Ct. at 1356–60; *Scheuer v. Rhodes,* 416 U.S. at 237–38, 94 S.Ct. at 1687–88; *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. at 453–54.

## B. Absolute Immunity under the Alabama Constitution

██ Relying only on a few Alabama state court cases, Defendants contend that to the extent Williams is suing Bibb, Steptoe and Freeman in their official capacities, they are entitled to immunity under the Alabama Constitution. The Constitution of Alabama pro-

vides "[t]hat the State of Alabama shall never be made defendant in any court of law or equity." Ala. Const. art. I, § 14. Defendants fail to refer the court to any cases which hold that this immunity provides state officials like Bibb, Steptoe and Freeman absolute immunity from a suit brought by a plaintiff under 42 U.S.C. § 1983 for deprivation of federally guaranteed rights in a federal court.

Williams argues that state-created sovereign immunity cannot immunize state officials against suits brought for actions taken by such officials under color of state law which cause a deprivation of rights protected by the United States Constitution. Williams asserts that to hold otherwise would render the federal courts powerless to enforce the Fourteenth Amendment against the states and would frustrate the purpose of 42 U.S.C. § 1983. In support of her argument, Williams cites *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) and *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

While *Martinez* provides some support for Williams' contention, the court finds a careful review of its holding is appropriate. In *Martinez,* the survivors of a girl killed by a parolee brought an action under 42 U.S.C. § 1983 against the state officials who made the decision to release the parolee. *Martinez,* 444 U.S. at 279, 100 S.Ct. at 556. The case presented two questions to the Supreme Court: "whether the Fourteenth Amendment invalidates a California statute granting absolute immunity to public employees who make parole-release determinations" and "whether such officials are absolutely immune from liability in an action brought under the federal Civil Rights Act of 1871, 42 U.S.C. § 1983." *Id.* First, the Supreme Court expressed its opinion that the statute was valid when applied to claims arising under state law. *Id.* Next, the Supreme Court rejected the contention that the California statute itself had deprived the victim of her life without due process of law. *Id.* at 281, 100 S.Ct. at 557. Finally, the Supreme Court turned to plaintiffs' argument that the state officials who released the parolee who murdered the victim had deprived the victim

of her life without due process of law. *Id.* at 283, 100 S.Ct. at 558.

Because the Supreme Court decided that the plaintiffs had not been deprived of a right secured by the Constitution and laws of the United States, it concluded it did not need "to decide any question concerning the immunity of state parole officials as a matter of **federal law.**" *Id.* at 284, 100 S.Ct. at 558 (emphasis added). The Supreme Court did cite two Seventh Circuit cases for the proposition that immunity is a question of federal law in such cases and that state law cannot immunize state actors from suit under 42 U.S.C. § 1983. *Id.* at 284 n. 8, 100 S.Ct. at 558 n. 8. According to *Martinez,* "[i]t is clear that the California immunity statute does not control this claim even though the federal cause of action is being asserted in the state courts." *Id.* at 284, 100 S.Ct. at 558. A later decision of the Supreme Court characterized *Martinez* as holding "that a State cannot immunize an official from liability for injuries compensable under federal law." *Howlett,* 496 U.S. at 360, 110 S.Ct. at 2434.

A further examination of *Howlett* provides even stronger support for Williams' contention that the immunity granted by the Alabama Constitution is inapplicable in a Section 1983 action against state officials for prospective injunctive relief. In *Howlett,* a former high school student filed a complaint in state court against a Florida school board and three school officials. *Howlett,* 496 U.S. at 359, 110 S.Ct. at 2433. In part, plaintiff sought relief under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights. *Id.* In its motion to dismiss, the school board contended that the court was without jurisdiction to hear the federal claims because of the Florida waiver-of-sovereign-immunity statute which did not extend to claims based on Section 1983. *Id.* On appeal, the Florida Court of Appeals decided that the availability of sovereign immunity in a Section 1983 suit brought in state court was a question of state, not federal, law. *Id.* at 360, 110 S.Ct. at 2434. The Florida Court of Appeals certified for appeal to the Florida Supreme Court the question whether Florida's statutory waiver of sover-

eign immunity allowed suits against the State and its agencies under Section 1983. *Id.* at 364, 110 S.Ct. at 2436. The Florida Supreme Court answered the question by relying on an analogy to Eleventh Amendment immunity and reaching the conclusion that "the Florida statute conferred a blanket immunity on governmental entities from federal civil rights actions under § 1983." *Id.*

The United States Supreme Court described the holding reached by the Florida high court as one which "raises the concern that the state court may be evading federal law...." *Id.* at 366, 110 S.Ct. at 2437. The question the *Howlett* case presented to the Supreme Court was

> whether a state-law defense of 'sovereign immunity' is available to a school board otherwise subject to suit in a Florida court **even though such a defense would not be available if the action had been brought in a federal forum.**

*Howlett,* 496 U.S. at 359, 110 S.Ct. at 2433 (emphasis added). A unanimous Supreme Court held that state sovereign immunity provides no shield against a suit brought in state court under 42 U.S.C. § 1983. *Id.* at 361–83, 110 S.Ct. at 2434–47. The Court begins by discussing the proposition that federal law is the "Law of the Land." *Id.* at 369, 110 S.Ct. at 2440. The Court further explains that

> "[a]n excuse that is inconsistent with or violates federal law is not a valid excuse: The Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source."

*Id.* at 371, 110 S.Ct. at 2440. The Supreme Court states that "[t]he elements of, and the defenses to, a federal cause of action are defined by federal law." *Id.* at 375, 110 S.Ct. at 2442 (citations omitted). *Howlett* further explains that

> While the Florida Supreme Court's actual decision in *Hill* is consistent with the foregoing reasoning, the Court of Appeal's extension of *Hill* to persons subject by § 1983 to liability is flatly inconsistent with that reasoning and the holdings in both *Martinez* and *Felder.* Federal law makes

governmental defendants that are not arms of the State, such as municipalities, liable for their constitutional violations. Florida law, as interpreted by the District Court of Appeal, would make all such defendants absolutely immune from liability under the federal statute. To the extent that the Florida law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law. 'Congress surely did not intend to assign state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.'

*Howlett,* 496 U.S. at 377–78, 110 S.Ct. at 2443–44 (citations omitted). Finally, the Supreme Court concludes that

> Congress did take common-law principles into account in providing certain forms of absolute and qualified immunity, and in excluding States and arms of the State from the definition of person. But as to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common-law heritage. If we were to uphold the immunity claim in this case, every State would have the same opportunity to extend the mantle of sovereign immunity to 'persons' who would otherwise be subject to § 1983 liability. States would then be free to nullify for their own people the legislative decisions that Congress made on behalf of all the People.

*Howlett,* 496 U.S. at 383, 110 S.Ct. at 2446.

Unfortunately while the obiter dicta of both *Howlett* and *Martinez* suggest that a state may not immunize its officials against liability from suit under 42 U.S.C. § 1983, the holdings of these cases do not directly address the issue before this court. The Old Fifth Circuit has held that "the full range of immunities available under common law do not apply in actions brought under § 1983" and that the federal law of qualified immunity, not state created immunity law, applied in such suits. *Donaldson v. O'Connor,* 493 F.2d

507, 530 (5th Cir. Apr. 1974) *vacated on other grounds by, O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Although this vacated decision is not binding authority, it does suggest that were the Eleventh Circuit to again face the issue, it would again hold that the federal law of immunities, and not the state law of immunities, applies to actions brought in federal court pursuant to 42 U.S.C. § 1983.

This conclusion is further bolstered by a review of the treatment this issue has received in the other federal appellate courts. The Courts of Appeals which have addressed this question have all concluded that state created sovereign immunities cannot protect state officials from suits brought under 42 U.S.C. § 1983. *See, e.g., Palmer v. City of Monticello,* 31 F.3d 1499 (10th Cir.1994) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law.... The immunity claim raises a question of federal law."); *Wade v. City of Pittsburgh,* 765 F.2d 405, 407–08 (3rd Cir. 1985) ("The supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law."); *Bell v. Wolff,* 496 F.2d 1252, 1253 (8th Cir.1974) ("[T]he measure, scope, and application of an asserted immunity under § 1983, arising as it does, under a federally created cause of action, cannot be restricted or enlarged by state law concerning official privilege and immunity."); *Donovan v. Reinbold,* 433 F.2d 738, 741–43 (9th Cir. 1970) ("[S]tate concepts of sovereign immunity [are] alien to the purposes to be served by the Civil Rights Act."); *Lynch v. Johnson,* 420 F.2d 818, 820–21 (6th Cir.1970) (Immunity in Civil Rights Act cases is a question of federal, not state, law.); *McLaughlin v. Tilendis,* 398 F.2d 287, 290–91 (7th Cir.1968) (Neither common law immunity nor the Illinois Tort Immunity Act can protect defendants against a cause of action grounded on a federal statute; the only analysis in such a case is the federally defined qualified immunity analysis.); *Jobson v. Henne,* 355 F.2d 129, 133–34 (2nd Cir.1966) (Immunity for all state officers would frustrate the purpose of 42 U.S.C. § 1983.).

In light of these authorities, the court rejects Defendants' contention that to the extent Williams is suing Bibb, Steptoe and Freeman in their official capacities they are entitled to immunity under the Alabama Constitution.

### C. Adequacy of the Complaint

Defendants argue that Williams' complaint is inadequate in two respects. First, they contend that she fails to plead with particularity facts which establish her prima facie case. Specifically, they contend Williams does not plead facts which establish the following: the content of her protected speech; the context of her protected speech; the form of her protected speech; other facts which might establish that her speech was on a matter of public concern; facts which lead to the conclusion that Williams' First Amendment interests outweigh any interest the defendant might have in suppressing the speech; and facts which indicate that her speech played a substantial part in defendants' decisions to deny her tenure and/or to terminate her or to take any other employment action against her. Second, Defendants contend that Williams' failure to plead the aforementioned facts with the requisite specificity impairs their ability to assert the qualified immunity defense.

### 1. Prima Facie Case

Williams brings suit pursuant to 42 U.S.C. § 1983. Section 1983 creates a private right of action for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state or local law deprives a plaintiff of rights, privileges or immunities "secured by the Constitution or laws." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege facts showing that the defendant's act or omission, done under the color of state law, deprived him of a right, privilege, or immunity protected by the Constitution or the laws of the United States." *Emory v. Peeler,* 756 F.2d 1547, 1554 (11th Cir. 1985) (citation omitted).

Specifically, Williams alleges that Defendants violated her First Amendment right by retaliating against her for a protected expression. A public employer may not

take adverse employment action against a public employee in retaliation for engaging in protected speech. *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989) (citation omitted). "A public employee's right to speak is limited by the government's interest in preserving the efficiency of the public services that it performs through its employees." *Belyeu v. Coosa County Bd. of Educ.,* 998 F.2d 925, 928 (11th Cir.1993). Therefore, in order to determine whether the Defendants have violated Williams' First Amendment rights to free speech by basing an employment decision on Williams' critical comments, the court must apply the balancing test described in *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Id.* The court must determine whether the expression addressed a matter of public concern and whether the employee's First Amendment interest in expression outweighs any legitimate interest the Defendants may have in suppressing such speech. *See, e.g., Belyeu,* 998 F.2d at 928; *Martinez v. City of Opa–Locka, Fla.,* 971 F.2d 708, 712 (11th Cir.1992) (per curiam); *Bryson,* 888 F.2d at 1565. The form, the content, the forum and the context of the speech are relevant to the court's determination of whether the speech was on a matter of public concern. *See, e.g., Belyeu,* 998 F.2d at 928–29; *Martinez,* 971 F.2d at 712; *Bryson,* 888 F.2d at 1567. If the court finds that Williams' speech was on a matter of public concern and that Williams' interest in expression outweigh the interests of the Defendants in suppression, the court must next determine whether Williams' speech played a "substantial part" in the Defendants' decision to deny Ms. Williams tenure and discharge her. *See, e.g., Belyeu,* 998 F.2d at 928; *Martinez,* 971 F.2d at 712; *Bryson,* 888 F.2d at 1565.

### 2. Qualified Immunity

Bibb, Steptoe and Freeman contend that they are entitled to qualified immunity for actions they took in their individual and official capacities.

Qualified immunity may be claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). Qualified immunity is a question of law to be decided by the court prior to trial. It is designed to allow officials who are entitled to qualified immunity to avoid the expense and disruption of going to trial, and is not merely a defense to liability. *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991).

The Supreme Court has referred to the qualified immunity analysis as the "objective-reasonableness" test. *Harlow,* 457 U.S. at 815–19, 102 S.Ct. at 2736–39. Under this test, public officials performing discretionary functions which would objectively appear to be within the official's authority have qualified immunity if their challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information possessed by the official at the time of the conduct. *Id.* at 818, 102 S.Ct. at 2738.

The objective-reasonableness test is a two part analysis. First, the defendant public official must prove that he was performing duties within the scope of his discretionary authority when the alleged violation occurred. *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir.1990) (citations omitted). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his normal job duties and were taken in accordance with those duties. *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988); *Cronen v. Texas Dep't of Human Services,* 977 F.2d 934, 939 (5th Cir.1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.").

Once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. *Hutton,* 919 F.2d at 1537. The plaintiff may meet this burden by establishing that "the defendant public official's actions 'violated clearly established constitutional law.' " *Id.* (citations omitted). The second prong of the

objective-reasonableness test has two subparts. *Id.* at 1538. First, the court must find that the constitutional law in question was clearly established when the alleged violation occurred. *Id.* Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

"Clearly established" means that "[t]he contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

> This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Id.* (citations omitted). Under this standard, qualified immunity is available to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, . . . the law clearly proscribed the actions the defendant took." *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989) (*quoting Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)). In determining whether the plaintiff meets this burden, the court is guided by the Eleventh Circuit's direction in *Nicholson v. Georgia Dep't of Human Resources,* 918 F.2d 145 (11th Cir.1990):

> In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable. Instead, the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry. Under this inquiry, the plaintiff need not point to one or more cases that resolved the precise factual issues at issue in his or her case. '[A]lthough the standard is fact-specific, it is not one of factual rigidity.' Rather, the plaintiff need only show that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances and possessing the same knowledge as the defendant.

*Id.* at 147 (citations omitted).

If the plaintiffs satisfy their initial burden and show that the rights that defendants' conduct allegedly violated were clearly established at the time of defendants' conduct, the court must then determine whether the plaintiffs have adduced evidence sufficient to create a genuine issue of fact as to whether defendants actually engaged in conduct that violated clearly established law. *Rich,* 841 F.2d at 1564. *See also Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir.1990). In this undertaking, the court must draw all inferences of fact in favor of the plaintiff when the plaintiff is the party opposing the motion. *Stewart,* 908 F.2d at 1503.

Thus, the court must determine whether Defendants acted in a way that was clearly unconstitutional. In other words, the court must here decide if Williams' complaint sufficiently alleges facts which if true could establish that Defendants violated clearly established law by denying Williams' tenure on the basis of speech protected by the First Amendment.

### 3. The "Heightened Specificity" Pleading Standard

In an effort to eliminate non-meritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims, the Eleventh Circuit, as well as others, has held that a plaintiff must meet a "heightened pleading" standard to survive a motion to dismiss claims under Section 1983. *Oladeinde v. City of Birmingham, Ala.,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied, sub nom. Deutcsh v. Oladeinde,* — U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *Arnold v. Bd. of Educ.,* 880 F.2d

305, 309 (11th Cir.1989); *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984).[3] That is, the plaintiff must provide a greater degree of factual specificity than is ordinarily necessary under the notice pleading approach of the Federal Rules of Civil Procedure. *Hunter v. District of Columbia,* 943 F.2d 69, 75 (D.C.Cir.1991) (citation omitted).

Under this heightened pleading standard, actions against governmental officials must be pleaded:

> with sufficient precision to put defendants on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a summary judgment motion on qualified immunity grounds.

*Brown v. Frey,* 889 F.2d 159, 170 (8th Cir. 1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990) (citations omitted) (internal quotation marks omitted). Nevertheless, the heightened standard requires "no more than that the plaintiff tell his story, relating the pertinent information that is already in his possession." *Hunter,* 943 F.2d at 76 (*citing Siegert v. Gilley,* 500 U.S. 226, 244–46, 111 S.Ct. 1789, 1800–01, 114 L.Ed.2d 277 (1991) (Marshall, J., dissenting)).

However, the heightened standard cannot be interpreted to require a plaintiff to plead information that is outside his control. *Id.* The court is also mindful that " 'fundamental rights and important questions of public policy are involved in actions under the various civil rights statutes and [a court] should not dismiss the complaint unless it is frivolous or fails to state a claim for relief.' " *Arnold,* 880 F.2d at 310 n. 2. (citation omitted).

In light of the foregoing authority, the court finds that Williams has failed to adequately allege with requisite specificity the facts which amount to a violation of her First Amendment rights. This lack of specificity makes it impossible for the court to determine whether she states a claim for which relief can be granted and whether qualified immunity protects Defendants from this suit. Specifically, Williams fails to plead with requisite specificity the form, content, context, and forum of all speech which she contends is protected and which allegedly led to Defendants' denial of tenure. Furthermore, Williams fails to adequately plead facts which lead her to conclude that her protected speech was a substantial motivating factor in Defendants' decisions with regard to the denial of tenure, or in the alternative, Williams fails to contend that such information is outside of her control. However, the court finds that Williams is entitled to amend her complaint to correct these deficiencies.

## V. CONCLUSIONS

For the foregoing reasons, it is hereby the ORDER of the court that Defendants' Motion to Dismiss is due to be GRANTED in part and DENIED in part, to the extent that

(1) Defendants' Motion to Dismiss Williams' complaint, to the extent that it is based on the argument that ASU is immune from suit under the Eleventh Amendment, is due to be and is hereby GRANTED and Alabama State University is Dismissed as a party defendant.

(2) Defendants' Motion to Dismiss Williams' complaint, to the extent that it is based on the argument that the Board of Trustees of Alabama State University is immune from suit under the Eleventh Amendment, is due to be and is hereby GRANTED

---

3. Generally, pleading is governed by Rule 8 of the Federal Rules of Civil Procedure which only requires a "short and plain statement of the claim showing that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). This is the "notice pleading" standard utilized in federal courts. *Id.*

However, the court recognizes that the Supreme Court has recently held that a heightened pleading requirement may not be imposed in § 1983 cases involving claims against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). The court notes that *Leatherman* calls into question the validity of imposing a heightened pleading standard in any § 1983 case. However, absent further direction from the Supreme Court or the Eleventh Circuit, the court will apply the heightened standard where appropriate under current Eleventh Circuit law. Thus, because Williams does not bring suit against a municipality, the court finds the application of the heightened pleading standard appropriate in this case.

and the Board of Trustees of Alabama State University is Dismissed as a party defendant.

(3) Defendants' Motion to Dismiss Williams' complaint, to the extent that it is based on the argument that Bibb, Steptoe, and Freeman are immune from suit in their official capacities under Article I, Section 14 of the Constitution of Alabama is due to be and is hereby DENIED.

(4) Defendants' Motion to Dismiss Williams' complaint, to the extent that it is based on the argument that the complaint fails to satisfy the "heightened specificity" pleading standard is due to be GRANTED unless Williams amends her complaint to allege with specificity facts which establish her claim under 42 U.S.C. § 1983 for violation of her First Amendment rights as it applies to Bibb, Steptoe, and Freeman and which allow these defendants to ascertain whether they are entitled to qualified immunity.

(5) Accordingly, it is further ORDERED as follows:

On or before October 26, 1994, the Plaintiff shall be allowed to file an amendment to the complaint setting forth what specific facts establish her claims against Bibb, Steptoe and Freeman, alleging with specificity the form, content, context, and forum of the speech which allegedly led to Defendants' denial of tenure, together with facts upon which she bases her conclusion that her protected speech was a substantial motivating factor in Defendants' employment decision. If Williams files such amendment Defendants will have until November 9, 1994 to plead further.