**D.R., a minor, by his next friend, Patricia ROBINSON, Plaintiff,**

v.

**George PHYFER, etc., et al., Defendants.**

**Civ. A. No. CV–95–A–016–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 6, 1995.

---

Robert Dean Drummond, Jr., Edwin Leo Yates, Montgomery, AL, for plaintiff.

Cynthia Williams Clinton, Mark Englehart, H. Lewis Gillis, Kenneth Lamar Thomas, Thomas, Means & Gillis, P.C., Montgomery, AL, William J. Samford, II, Ala. Dept. of Youth Services, Mt. Meigs, AL, for George Phyfer, James Dupree.

Cynthia Williams Clinton, Mark Englehart, H. Lewis Gillis, Kenneth Lamar Thomas, Montgomery, AL, William J. Samford, II, Ala. Dept. of Youth Services, Mt. Meigs, AL, Mark S. Boardman, J. Wesley Hughes,

Boardman & Tyra, P.C., Birmingham, AL, for James Kent.

### *MEMORANDUM OPINION*

ALBRITTON, District Judge.

### INTRODUCTION

This cause comes before the court on several motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). The procedural events leading to the motions' submission are described below.

Following a June 4, 1994, riot at a juvenile detention facility known as the Mt. Meigs campus, operated by the Alabama Department of Youth Services, ("DYS"), plaintiff D.R., ("Plaintiff"), a minor, through his next friend, Patricia Robinson, filed a complaint in this court against George Phyfer, Director of DYS, and James Kent, Chief of Security of DYS. The complaint, filed on January 5, 1995, asserted various constitutional claims, actionable pursuant to 42 U.S.C. § 1983, and state law claims against these defendants in their official and individual capacities.

On April 17, 1995, following a February 15, 1995, motion to dismiss that argued the complaint failed to meet the applicable heightened pleading standard, Plaintiff filed his Amended Complaint. The Amended Complaint adds detailed allegations concerning each defendant's acts and omissions allegedly giving rise to liability. The Amended Complaint also adds James Dupree, who recently replaced defendant Phyfer as Director of DYS, as a defendant in his official capacity. (Collectively, defendants Phyfer, Kent and Dupree will be referred to as "Defendants.")

On April 27 and 28, 1995, Defendants filed new motions to dismiss that incorporate by reference their previous motions. Defendants argue in these motions that the Eleventh Amendment bars the official capacity claims against them, and qualified immunity bars the § 1983 claims against Phyfer and Kent individually.

On June 15, 1995, this court issued its Order denying the February 15, 1995, Motion to Dismiss as moot. The Order set out a briefing schedule for the remaining motions, requiring Plaintiff to specify in his brief the

particular constitutional right allegedly violated by each defendant. In response to this Order of the court, Plaintiff argues, in Plaintiff's Brief to Show Cause, that Defendants violated his Eighth Amendment right to reasonable protection from assault by fellow inmates. The parties have fully briefed these motions, placing them under submission before this court.

### STANDARD OF REVIEW FOR MOTION TO DISMISS

A Fed.R.Civ.P. 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of the motion, the court will accept as true all well-pleaded factual allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Furthermore, a court may dismiss a complaint only if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. The court recognizes that only an "exceedingly low" threshold must be met to survive the Rule 12(b)(6) motion. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

### FACTS ALLEGED

D.R. entered the DYS system as a juvenile offender on December 28, 1993, and resided on the Mt. Meigs campus of DYS. (Am. Compl. ¶ 6.) On or about June 4, 1994, a riot erupted on the Mt. Meigs campus between the students from two dormitories. (Am. Compl. ¶ 9.) Other inmates beat Plaintiff with bricks, sticks, fists and other unknown objects, severely injuring him. *Id.*

Prior to the riot, the following security and dorm deficiencies at the Mt. Meigs campus existed: (1) overcrowded dormitory facilities, (Am.Compl. ¶ 12b); (2) inadequate numbers of security and dormitory personnel to supervise juveniles, (Am.Compl. ¶¶ 13a, 13e, 14a, 16b); (3) inadequately trained security and staff personnel, (Am.Compl. ¶¶ 12d, 12f, 14b, 14e, 16c); and (4) lack of emergency plans for intervention into inmate disturbances,

(Am.Compl. ¶ 14c). Defendants Phyfer and Kent knew of the security deficiencies listed above, and also knew "that security and dorm deficiencies and conditions at DYS were conducive to assaultive behavior and/or riots." (Am.Compl. ¶ 16a.) Even so, "inadequate measures were taken to prevent assaults by fellow juveniles, and ... measures taken were so deficient that they allowed the continuance of conditions conducive to assault." (Am.Compl. ¶ 16g.) As a result of Phyfer and Kent's deliberate indifference to Plaintiff's right to be free from assaults by fellow inmates, Plaintiff suffered injury. (Am.Compl. ¶ 22.)

## DISCUSSION

In response to the court's June 15, 1995, Order requiring Plaintiff to specify each defendant's alleged constitutional violation, Plaintiff asserts only that Defendants violated the Eighth Amendment's prohibition of cruel and unusual punishment. Therefore, the court today considers only those constitutional claims that are premised upon the Eighth Amendment; the other constitutional claims mentioned in the Amended Complaint, alleging violations of substantive due process guaranteed by the Fifth and Fourteenth Amendments, (Am.Compl. ¶ 21), will be dismissed as abandoned by Plaintiff.

After carefully considering the arguments of all parties regarding the Eighth Amendment claims, the court concludes that these claims must be dismissed as well. To the extent Defendants are sued in their official capacity, the Eleventh Amendment bars this court from hearing these claims. As for the Eighth Amendment claims seeking to hold Phyfer and Kent individually liable, the court finds that no prior case law, binding in this circuit, clearly establishes the alleged constitutional violation, entitling these defendants to qualified immunity.

Having concluded that all claims subject to the court's original jurisdiction should be dismissed, the court chooses to refrain from exercising its supplemental jurisdiction over the remaining state law claims.

## I. ELEVENTH AMENDMENT IMMUNITY

The Defendants argue that the Eleventh Amendment to the Constitution of the United States bars all official capacity claims against them. (Am. Mot. Defs. Dismiss at 3–4.) Plaintiff, citing *Jackson v. Georgia Dept. Of Transportation*, 16 F.3d 1573 (11th Cir.1994), responds that the Eleventh Amendment bars only those suits where a judgment adverse to the state official would be paid from the state treasury. (Pl.'s Br.Show Cause at 26.) Plaintiff argues that the official capacity claims should proceed because no evidence before the court confirms that such a judgment would be paid from the state treasury. *Id.* As explained below, Plaintiff relies on an overly broad interpretation of *Jackson*.

■ The Eleventh Amendment bars suit in federal court against state officials sued for damages in their official capacity. *Jackson*, 16 F.3d at 1575. The court in *Jackson* never questioned this rule. Instead, the court in *Jackson* considered whether Eleventh Amendment immunity extends to state officials sued in their individual capacities when a judgment against them would be paid from a state-created liability insurance fund. *Id.* at 1576. The Defendants argue that the Eleventh Amendment bars official capacity suits against them in this court, a rule affirmed in the *Jackson* decision. Since the Defendants are state officials, the court will dismiss the official capacity claims against them on the basis of Eleventh Amendment immunity.

## II. QUALIFIED IMMUNITY

■ Defendants argue that qualified immunity bars the Eighth Amendment claims brought against Phyfer and Kent in their individual capacity. (Am.Mot.Defs.Dismiss at 4.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The qualified immunity analysis consists of two sepa-

rate components: first, the government official must establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred, and second, the plaintiff must demonstrate that the official's actions violated clearly established rights. *Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992).

 The term "discretionary authority" includes all actions of a government official that (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir.1994) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988)). The complaint alleges that defendants Phyfer and Kent breached their respective supervisory duties relating to conditions of confinement in an Alabama youth detention facility. It appears from the face of the complaint that, at all times relevant to these proceedings, these defendants acted within their discretionary authority. Therefore, the court proceeds to the second prong: whether Plaintiff's allegations implicate an Eighth Amendment right clearly established at the time of the alleged wrongful activities.

 The Eleventh Circuit reiterated in *Lassiter v. Alabama A & M University, Board of Trustees,* 28 F.3d 1146 (11th Cir. 1994), the stringent standard that must be met before a right becomes clearly enough established to strip a government official of qualified immunity:

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, [cite], [cite] (1987).... For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent

that what defendant is doing violates federal law in the circumstances.

*Lassiter,* 28 F.3d at 1149–50 (string citations and quotations omitted). Furthermore, only the Supreme Court of the United States, the United States Court of Appeals for the Eleventh Circuit, or, in certain circumstances, a state's highest court, can clearly establish the law for qualified immunity purposes in this circuit. *See Courson v. McMillian,* 939 F.2d 1479, 1497–98 (11th Cir.1991). With this standard in mind, the court will examine whether the alleged actions of Phyfer and Kent deprived Plaintiff of a right so clearly established that "only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *See Id.* at 1149 (citing *Malley v. Briggs,* 475 U.S. 335, 341–43, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986)).

 The Eighth Amendment requires that a prison inmate be protected from the constant threat of violence and from physical assault by other inmates. *Zatler v. Wainwright,* 802 F.2d 397, 400 (11th Cir.1986). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." *Id.* Thus, the amount of protection required by the Eighth Amendment can be clearly defined only in the facts of case law. Since "the limits of the Eighth Amendment's proscription are not easily or exactly defined," *Gates v. Collier,* 501 F.2d 1291, 1309 (5th Cir.1974), analogy becomes difficult even for the trained lawyer; therefore, defendants Phyfer and Kent cannot be individually liable to Plaintiff unless, in a prior case, conditions of confinement virtually identical to those alleged here were found to violate the Eighth Amendment.

Plaintiff cites no authority clearly establishing in this circuit that Phyfer and Kent violated the law. Many of the cases cited by Plaintiff come from courts in other circuits and thus cannot clearly establish the law of this circuit.[1] The cases that are relevant to

---

1. The court notes that Plaintiff's Brief to Show Cause, when addressing the qualified immunity

issue, fails to designate the court of origin when citing cases that allegedly clearly establish the

this circuit share no factual similarity to this case and thus are useless for qualified immunity purposes. Nevertheless, the court's own research reveals three authorities whose factual similarity to this case merits this court's attention. Of these, *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir.1993), arguably comes closest to clearly establishing the right asserted by Plaintiff.

In *LaMarca*, the Eleventh Circuit reviewed a district court's award of damages to prison inmates, who sued under § 1983 because the superintendent of their prison facility failed to provide them with reasonable protection from prison violence. The inmates did not argue that the superintendent knew of specific threats to their safety; rather, they argued that the superintendent failed to ensure their protection from the general danger arising from a prison environment that both stimulated and condoned violence. *Id.* at 1535. The Eleventh Circuit held that the inmates could recover damages pursuant to 42 U.S.C. § 1983 if they proved, among other elements, that they endured a condition of confinement that inflicted unnecessary pain or suffering. *Id.*

The Eleventh Circuit agreed with the lower court that inmates in the prison endured an unjustified, constant and unreasonable exposure to violence that caused unnecessary pain and suffering. *Id.* As outlined below, the security in the prison was grossly deficient, resulting in constant predation by stronger inmates against their weaker counterparts:

A guard's view from the wicket into the interior of the dorm and the shower area was obstructed by sheets and towels the inmates hung from their bunk beds. . . . While officers were supposed to patrol the interiors of the dorms regularly, they did not. . . .

The prison also maintained cells for disciplinary, administrative, and protective confinements. This special detention suffered from substandard conditions. The cells lacked adequate ventilation, had poor lighting, and were infested with roaches

and vermin. . . . Inmates in the general population could gain access to the confinement area by crawling under a poorly maintained fence or with the permission of the guard in charge of the area. These confinements, therefore, failed to insulate inmates from their tormentors. Finally, an inordinate number of inmates requested protective confinement, leading to overcrowding and indicating that a serious problem existed in the general population. . . .

The presence of contraband (weapons, alcohol, and drugs), corruption of [the prison's] staff, inmate violence, and homosexual activity were accepted as part of prison life. . . . Inmates carried knives and openly used drugs. The contraband problem was compounded by staff corruption, as prison officials contributed to, and apparently profited from, the contraband, and utilized prisoners to "control" and punish other prisoners.

[The prison] staff permitted regular, unsupervised showings of hard-core pornographic movies. As Dr. Swanson, an expert witness for the plaintiffs, testified, these movies "would only serve to maximize the possibility of sexual and other violence." Indicative of this observation, during the movies, "[s]ounds of inmates screaming and crying could be heard." . . .

A group of inmates, one brandishing a bush ax, made an unsuccessful attempt sexually to assault [another inmate] in a dorm. Inmates raped [a second inmate] in a small bathroom adjacent to the confinement area; he reported the incident but officials did not investigate and refused his request for a medical examination. Inmates repeatedly attacked [a third inmate] while he was in protective confinement. Inmates raped [a fourth inmate and a fifth inmate] in shower areas. [One of these inmates] reported the incident to an officer, but there was no investigation. [A sixth inmate] was sexually assaulted with the handle of a baseball bat on [the pris-

---

Plaintiff's rights. (Pl.'s Br. Show Cause at 15.) Considering the relevance of a case's origin for purposes of qualified immunity analysis, such

form of citation could be misleading. Plaintiff's attorneys should refrain in the future from using such poor form when citing cases to the court.

on's] recreation field. [A seventh inmate] was stabbed by an inmate who, because of his cooperation with guards in conducting illicit activities, was protected.

*LaMarca*, 995 F.2d at 1532–33. The Eleventh Circuit concluded that this evidence established five conditions of confinement, all under the superintendent's control, that together created an unconstitutional risk of violence at the prison: (1) a prevalence of weapons at the prison, (2) the lack of adequate patrols, (3) the lack of adequate reporting procedures for rapes and assaults, (4) the presence of obvious and rampant indicia of homosexual activity, and (5) a lack of supervision of officers leading to corruption and incompetence. *Id.* at 1539. The court reiterated that "[w]hen prison officials have failed to control or separate prisoners who endanger the physical safety of other prisoners and the level of violence has become so high ... it constitutes cruel and unusual punishment...." *Id.* at 1535 (quoting *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. 1981)).

Plaintiff in this case, although not citing the *LaMarca* opinion, seeks to use *LaMarca*'s theory of liability to hold defendants Phyfer and Kent individually liable. Plaintiff alleges that the following deficient security practices deprived him of adequate protec-

tion from other inmates: (1) overcrowded dormitory facilities, (2) inadequate numbers of security and dormitory personnel to supervise juveniles, (3) inadequately trained security and staff personnel, and (4) lack of emergency plans for intervention into inmate disturbances. As explained below, the conditions of confinement held unconstitutional in *LaMarca* and the conditions allegedly endured by Plaintiff are not substantially similar.

 *LaMarca* fails to clearly establish that the Eighth Amendment proscribes the conditions of confinement allegedly endured by Plaintiff at the Mt. Meigs campus. In *LaMarca*, the court found that five conditions of confinement, taken together, created an unconstitutional risk of violence at the prison. *LaMarca*, 995 F.2d at 1539. Of the five conditions listed in *LaMarca*, Plaintiff alleges at most the presence of only three in the Mt. Meigs facility: inadequate security patrols, unsupervised and incompetent officers, and perhaps, with a stretch, the availability of weapons.[2] Plaintiff does not allege that procedures for reporting assaults were inadequate. Perhaps most important, Plaintiff fails to allege the presence of recurring, rampant violence in the Mt. Meigs campus, such as that existing in the prison in *LaMarca*.[3] The law remains unclear whether the

2. Even though Plaintiff alleges that other inmates used sticks and bricks to beat him, the court questions whether this use of weapons indicates a contraband problem of the kind described in *LaMarca*.

3. Plaintiff makes the general allegation that "inadequate measures were taken to prevent assaults by fellow juveniles...." (Am.Compl. ¶ 16f.) Such a general allegation might arguably encompass all of the security deficiencies whose combination violated the Eighth Amendment in *LaMarca*. Therefore, one might argue, Plaintiff should be allowed to proceed past the motion to dismiss stage, because "a court may dismiss a complaint only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232. This argument might well succeed in any case other than one where, as here, a government official is sued individually.

In an effort to eliminate non-meritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims, the Eleventh Circuit holds that a plaintiff must meet a "heightened pleading" stan-

dard to survive a motion to dismiss claims under § 1983. *Williams v. Alabama State University*, 865 F.Supp. 789 (M.D.Ala.1994). This heightened pleading standard ensures that plaintiffs cannot use vague and conclusory allegations to undermine qualified immunity's primary purpose—avoidance by government officials of the expense and disruption of going to trial. *See McMillian*, 878 F.Supp. at 1490. Thus, in cases where a government official's qualified immunity is at issue, a plaintiff must plead with factual specificity that information within his control. *Williams*, 865 F.Supp. at 799.

The Plaintiff has amended his complaint already in response to a heightened pleading standard challenge. As an inmate of the Mt. Meigs campus, he should have first-hand knowledge of the conditions of confinement existing in that facility, including the level of recurring violence, procedures for reporting this violence, and prevalence of contraband. Therefore, the court, in considering the motions to dismiss, looks only to the particular conditions that Plaintiff alleges resulted in the Eighth Amendment violation; conclusory, vague allegations must and will be ignored.

conditions allegedly existing in the Mt. Meigs facility, standing alone, rise to the level of a constitutional violation. *Cf. Gates,* 501 F.2d at 1309 ("Each factor separately, i.e., overcrowding dormitory barracks, lack of classification according to severity of offense, untrained inmates with weapons, lack of supervision by civilian guards, absence of a procedure for confiscation of weapons, may not rise to constitutional dimensions; however, the effect of the totality of these circumstances is the infliction of punishment on inmates violative of the Eighth Amendment...."). Thus, even if all of Plaintiff's allegations are true, the court cannot find that *LaMarca* clearly establishes a violation of Plaintiff's Eighth Amendment right to protection.

Two more Eleventh Circuit decisions merit brief attention in determining whether Defendants violated a clearly established Eighth Amendment right belonging to Plaintiff: *Zatler v. Wainwright,* 802 F.2d 397 (11th Cir.1986), and *Williams v. Bennett,* 689 F.2d 1370 (11th Cir.1982). In *Zatler,* the Eleventh Circuit recognized that the Secretary of the Florida Department of Corrections could violate the Eighth Amendment if, with deliberate indifference, he established a policy that breached his statutorily prescribed duty to protect inmates from victimization within prisons, thereby causing an inmate's injury. 802 F.2d at 401. *Zatler* provides little assistance to Plaintiff in stripping defendants Kent and Phyfer of their qualified immunity: Even though the *Zatler* court recognized that the Secretary could theoretically violate the Eighth Amendment, it also held that the particular facts in the case failed to establish a constitutional violation. *Id.* at 402. Thus, while the *Zatler* decision indicates that Plaintiff asserts a cognizable theory of liability, the decision fails to clearly establish that Phyfer and Kent, in their particular circumstances, violated the Eighth Amendment. In other words, without a factually specific finding of liability, *Zatler* cannot clearly establish liability in any particular circumstances.

The *Williams* decision is the third and final authority meriting consideration. *Williams* confirmed that "[c]onfining medium and maximum security risk prisoners in a dormitory without the presence of a guard inevitably exposes each inmate to violent injury at the hands of other inmates," and that individual members of the Board of Corrections could be held liable if their deliberate indifference caused an inmate to be housed in such conditions. 689 F.2d at 1385. The particular security deficiency leading to the Eighth Amendment violation in *Williams* was the failure "to separate violent, aggressive inmates from those who are passive or weak." *See Id.* at 1375, 1385. Plaintiff does not allege in this case that Defendants failed to segregate particularly violent juveniles from more passive juveniles. Therefore, the case fails to clearly establish the Eighth Amendment right asserted by Plaintiff.

In summary, Plaintiff cites no authority to this court, nor can the court find any authority, clearly establishing that conditions of confinement at the Mt. Meigs campus violated Plaintiff's Eighth Amendment right to be protected from violence at the hands of other inmates. Therefore, defendants Phyfer and Kent are entitled to qualified immunity, and the court will dismiss the § 1983 claims against them in their individual capacities.

## III. STATE LAW CLAIMS

The Judicial Improvements Act of 1990 allows a court to decline the exercise of supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3). Because Plaintiff does not seek prospective injunctive relief that would survive an Eleventh Amendment challenge, the court will dismiss all § 1983 claims against Defendants in their individual and official capacities on the basis of qualified immunity and Eleventh Amendment immunity. Accordingly, because no claims subject to the court's original jurisdiction remain, the court will dismiss the state law claims without prejudice.

## CONCLUSION

For the foregoing reasons, the court will dismiss all federal law claims against the Defendants. The remaining state law claims will be dismissed without prejudice. A judg-

ment in accordance with this memorandum opinion will be entered separately.