**Greg ZATLER, Plaintiff-Appellant,**

**v.**

**Louie L. WAINWRIGHT, et al., Defendants-Appellees.**

No. 85–3614.

United States Court of Appeals, Eleventh Circuit.

Oct. 17, 1986.

Rehearing and Rehearing En Banc Denied Dec. 3, 1986.

Ben R. Patterson, Tallahassee, Fla., for plaintiff-appellant.

Charles T. Collette, Gary J. Anton, Douglas A. Mang, Tallahassee, Fla., for defendants-appellees.

Before FAY, CLARK and NIES,* Circuit Judges.

PER CURIAM:

Gregory L. Zatler, a former inmate of the State of Florida Department of Corrections, brought this civil rights action alleging that prison officials failed to protect him from sexual assault while he was in prison. He seeks monetary damages and declaratory and injunctive relief under 42 U.S.C. § 1983 (1982) and the eighth and fourteenth amendments. The United States District Court for the Middle District of Florida entered an order dismissing this action. We affirm.

## I.

Zatler, proceeding pro se, initiated this action by filing a complaint on March 4, 1982. The complaint alleged that Zatler had been sexually assaulted at three different institutions within the State of Florida in which he had been incarcerated. Zatler named as defendants the appellee, Louie L. Wainwright, as Secretary of the Florida Department of Corrections, and Robert Medlock, a correctional officer at Florida State Prison. On November 21, 1983, the district court dismissed Medlock as a defendant in this action for failure to perfect service of process upon him. In so doing,

the court noted that Zatler had failed to name the individuals who were responsible for his protection when he was assaulted. Accordingly, in view of defendant Medlock's dismissal, the court granted Zatler an opportunity to amend his complaint to name those individuals responsible for his protection at the various institutions in which he was assaulted.

On December 14, 1983, Zatler, represented by counsel, filed an amended complaint naming Wainwright, R.D. Massey, R.V. Turner, John Shaw, K.W. Helms, Ana Gispert and Clayton Strickland, Jr., as defendants. These six additional defendants were superintendents of the institutions in which Zatler had been incarcerated and in which he had been sexually assaulted. In the amended complaint, Zatler alleged that he had been forcibly raped by inmates at six different institutions on eight occasions. Zatler complained that as "a young, white, slightly built man," he was "a member of an identifiable group of prisoners who, because of their size, age, and race, suffer [sic] a pervasive risk of harm from sexual assault by other prisoners." The complaint stated that the defendants, by virtue of their positions, were required to provide Zatler with reasonable protection. The complaint alleged, however, that "[t]he Defendants acted with reckless disregard of [Zatler's] right to be free from violent attacks by fellow inmates, and were, therefore, deliberately indifferent, to his constitutional rights." Finally, Zatler complained that he suffered "embarrassment, humiliation, and great mental distress" as a result of the assaults upon him and "the Defendants' failure to prevent such attacks by either inadequate training or supervision of their staff, or improper classification of [Zatler]."

The defendants filed an answer on January 24, 1984. Discovery then commenced.[1] On August 17, 1984, the defendants filed a motion for judgment on the pleadings

---

* Honorable Helen W. Nies, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. It should be noted that very little discovery has been completed in this action. The only effort to obtain information from Wainwright has been to serve him with interrogatories.

and/or summary judgment. The defendants later filed a number of affidavits in support of the motion. On September 19, 1984, Zatler responded by filing a memorandum opposing the defendants' motion. Thereafter, Zatler's affidavit and the defendants' answers to Zatler's interrogatories were filed with the court.

On July 1, 1985, the district court entered an order dismissing all the defendants named in the action.[2] The six superintendent defendants were dismissed, without prejudice, for insufficient service of process. Zatler does not appeal the dismissal of these defendants. The court also dismissed Wainwright. In so doing, the court pointed out that Wainwright was named because of his role as chief policy-maker of the Florida Department of Corrections. The court further noted that Zatler did not allege that Wainwright had any personal knowledge of the assaults. Accordingly, in view of the fact that the eighth amendment requires proof of a defendant's deliberate indifference and section 1983 requires proof of a causal connection between the actions of the defendant and the constitutional deprivation, the court dismissed Wainwright as a defendant in the action.

## II.

■ Zatler's amended complaint added a claim for declaratory and injunctive relief. At the time the amended complaint was filed, Zatler was an inmate of the Florida correctional system. At the time the district court rendered its opinion, Zatler continued to be incarcerated, although he had been transferred to another correctional institution. Thereafter, on October 29, 1985, Zatler was released from prison. "This court is under a duty to review its jurisdiction of an appeal at any point in the appellate process." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir.1985) (per curiam). In view of Zatler's subsequent release, we find that his claims for declaratory and injunctive relief are now moot. *See id.* ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred."); *Kellerman v. Askew*, 541 F.2d 1089, 1090 n. 1 (5th Cir.1976)[3] (prisoner's motion for equitable relief deemed moot due to his having been paroled).

## III.

The sole issue which remains on appeal, therefore, is whether Zatler's claim for damages against Wainwright, in both his individual and official capacities, was properly dismissed.

## A.

■ Wainwright argues that the eleventh amendment[4] bars Zatler's claim for damages against Wainwright in his official capacity. Although Wainwright raised eleventh amendment immunity as an affirmative defense in his answer, the district court did not address this issue. Nevertheless, we are under a continuing duty to review our jurisdiction at any point on appeal, *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir.1985) (per curiam), and the eleventh amendment "partakes of the nature of a jurisdictional bar," *Edelman v. Jordan*,

---

**2.** Although the district court referred to its order as an order of dismissal, we treat the order as one granting summary judgment. In view of the fact that the order explicitly referred to the fact that affidavits and interrogatories had been filed in this action, we presume that the district court considered the entire record in rendering its decision. *See Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984) ("It has been held that the court converts a motion to dismiss into a motion for summary judgment by considering matters beyond the complaint.").

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) we adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**4.** The eleventh amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974).

It is well established that the eleventh amendment immunizes an unconsenting state from suits brought in federal court by its citizens and citizens of other states. *Id.* at 662–63, 94 S.Ct. at 1355–56. Moreover, "even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Id.* at 663, 94 S.Ct. at 1355. " '[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.' " *Id.* (quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945)). *See also Williams v. Bennett,* 689 F.2d 1370, 1376–77 (11th Cir.1982) (the eleventh amendment has been applied to bar prisoner's section 1983 damage claims brought in federal court against prison officials in their official capacities), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). Therefore, "[a]bsent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued," *Gamble v. Florida Department of Health & Rehabilitative Services,* 779 F.2d 1509, 1511 (11th Cir.1986), Zatler may not maintain a suit against Wainwright in his official capacity.

 It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. *Quern v. Jordan,* 440 U.S. 332, 340–45, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.[5] *See Gamble,* 779 F.2d at 1513–

20. Accordingly, Wainwright is immune from suit in his official capacity.

### B.

The eighth amendment's prohibition of "cruel and unusual punishments" requires that punishment be compatible "with 'the evolving standards of decency that mark the progress of a maturing society.' " *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). Thus, it is well settled that a prison inmate has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates. *Gullatte v. Potts,* 654 F.2d 1007, 1012 (5th Cir.1981). *See also Harmon v. Berry,* 728 F.2d 1407, 1409 (11th Cir.1984) (per curiam); *Jones v. Diamond,* 636 F.2d 1364, 1373 (5th Cir.1981) (en banc). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." *Gullatte,* 654 F.2d at 1012. " 'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.' " *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.1982) (quoting *Wright v. El Paso County Jail,* 642 F.2d 134, 136 (5th Cir. 1981), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)). *See also Martin v. White,* 742 F.2d 469, 474 (8th Cir. 1984) ("[P]rison officials may be liable where they are 'deliberately indifferent to [a prisoner's] constitutional rights, either because they actually intended to deprive

---

5. Two Florida District Courts of Appeal have also concluded that Florida has not waived its sovereign immunity in § 1983 actions. *See Skoblow v. Ameri-Manage, Inc.,* 483 So.2d 809, 812 (Fla. 3d Dist.Ct.App.1986); *Spooner v. Department of Corrections,* 488 So.2d 897 (Fla. 1st

Dist.Ct.App.1986). Although the Florida Supreme Court has not yet addressed this issue, in *Spooner,* the court certified this very question to the Florida Supreme Court pursuant to Fla.R. App.P. 9.030(a)(2)(A)(v).

him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.'") (quoting *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir.1982)).

■ In addition, section 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. *Williams*, 689 F.2d at 1380, 1381. Moreover, "when individuals are being sued in individual capacities for damages for personal injuries, the causation inquiry must be more refined and focused than that undertaken ... where only declaratory and injunctive relief [are] sought for constitutional violations pervading an entire prison system." *Id.* at 1383.

■ A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation. *See Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 706 (11th Cir.1985). Zatler does not allege, however, that Wainwright was personally involved in acts which deprived Zatler of his constitutional rights.[6] To the contrary, Wainwright is sued in his capacity as the chief policy-maker of the Florida Department of Corrections who is charged "with the care, control and supervision of all inmates of and personnel employed by the State of Florida Department of Corrections." *See* Amended Complaint at 3. Personal participation, however, is only one of several ways to establish the requisite causal connection. *Williams*, 689 F.2d at 1381. An official may also be liable where a policy or custom that he established or utilized results in deliberate indifference to an inmate's constitutional rights. *See Ancata*, 769 F.2d at 706. "'Another theory ... is that a supervisory defendant is subject to § 1983 liability when he breaches a duty imposed by state or local law, and this

breach causes plaintiff's constitutional injury.'" *Williams*, 689 F.2d at 1381 (quoting *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976)). *See also Ancata*, 769 F.2d at 706. Here, "the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Williams*, 689 F.2d at 1381.

Fla.Stat. § 20.315(4)(a) (1985) provides that the Secretary of the Department of Corrections shall have the "responsibility to plan, direct, coordinate, and execute the powers, duties, and responsibilities assigned to the department." Fla.Stat. § 20.-315(1) (1985) outlines the goals of the department. These include "the protection of the offender from victimization within the institution," Fla.Stat. § 20.315(1)(c) (1985), and the provision of "the necessary level of security in institutions," Fla.Stat. § 20.-315(1)(g) (1985). Finally, Fla.Stat. § 20.-315(17) (1985) provides:

> PLACEMENT OF OFFENDERS.— The department shall classify its programs according to the character and range of services available for its clients. The department shall place each offender in the program or facility most appropriate to the offender's needs, subject to budgetary limitations and the availability of space.

Wainwright can be found individually liable under section 1983 if he breached the above statutorily imposed duties and this breach caused Zatler's alleged constitutional injury.

■ Zatler argues that he is a member of a category of persons exposed to the threat of sexual assault and that Wainwright has failed to adopt a policy which provides sufficient protection to Zatler and

---

6. The duties of the Secretary of the Department of Corrections are largely supervisory in nature and do not include the day-to-day operations of the various institutions. It is not surprising, therefore, that Wainwright has little direct contact with individual inmates. In fact, the only indication in the record that Wainwright had any personal involvement with Zatler prior to the institution of this suit, was a letter from Wainwright dated April 17, 1980 responding to Zatler's request for a transfer. In that letter, Zatler was informed that his request for a transfer had been approved.

others similarly situated. To maintain a cause of action against Wainwright, however, any alleged failure to adopt adequate policies for inmate protection must amount to a breach of Wainwright's duty and must evidence reckless disregard or deliberate indifference to Zatler's constitutional rights. Wainwright's responses to Zatler's interrogatories establish the contrary.

Wainwright was first asked to describe any and all measures taken to protect Zatler and other inmates from sexual abuse. He responded:

As Secretary of the Department of Corrections, my role is supervisory in nature and does not involve the making of day-to-day decisions with regard to individual inmates in each of the Florida correctional facilities. However, staffing of institutions is continuously monitored to ensure that staff is appropriately assigned in order to provide the maximum possible supervision.

Current classification procedures enable us to better identify the more aggressive inmates. When these inmates are identified, attempts are made to place them in an area provided with greater security.

An inmate seeking sexual, or other favors, is not always easy to identify. For this reason we have established a procedure whereby an inmate who feels he needs protection from other inmates or staff can immediately request protection. Once institutional staff receive this request, the inmate requesting protection is immediately placed in secure confinement. Rule 33–3.082 outlines the procedure by which an inmate may seek protection.

Thereafter, with respect to measures taken to protect Zatler specifically, Wainwright explained:

Mr. Zatler has been assigned to eight facilities in an attempt to find an environment in which he can adjust to open population. This has been difficult due to problems created by his admitted homosexuality. At each institution, Mr.

Zatler has been housed in protective confinement to assure his personal safety. The record further reveals that Zatler has been immediately placed in protective custody every time he requested it and has been released therefrom only at his own request.

In addition, Wainwright was also asked to identify all documents which provide instruction on classification of potential victims of sexual abuse, prevention of inmate sexual abuse, and investigation of complaints of sexual abuse by inmates, including disciplinary procedures for those inmates found guilty. Wainwright responded as follows:

Sexual abuse is not the subject of specific instructions. Rather, instructions are for review and monitoring of each case by a team of staff members on a regular basis with authority to make any programming changes as dictated by the facts of the case. In extreme cases, inmates may be designated as "special review," which requires more individual review as changes are made.

Inmates found guilty of sexual abuse are disciplined through the established disciplinary procedures, with punishment imposed as set forth in the Rules of Prohibited Conduct. When the case is accepted for prosecution, it is handled through the judicial process. Aggressive sexual abusers that are identified are separated from those that may be abused.

The offender that is sexually abused will be worked with by the classification team, psychologist and/or psychiatrist on an individualized basis if requested or if staff determines such a need.

Sexual abuse or sexual offenders are handled as a serious problem. Any staff neglect of duty would be handled through the personnel disciplinary procedures.

Based on these responses, it is clear that Wainwright's attitude is not at all one of reckless disregard of Zatler's right to be free of violent attacks or deliberate indifference to his constitutional rights.

Moreover, Zatler does not dispute Wainwright's responses except to the extent that he states that prison officials discouraged inmates from seeking protective custody because of the harsh conditions of such protective custody. In his affidavit, Zatler describes those conditions.[7] Zatler does not argue, however, that he was ever refused protective custody, nor does he argue that the conditions of protective custody were cruel and unusual. Rather, Zatler complains only that he did not like the conditions of protective custody. Clearly, this does not establish a cause of action for damages against Wainwright for failure to provide Zatler with reasonable protection. Nor does it establish Wainwright's reckless disregard or deliberate indifference to Zatler's constitutional right to be free from physical assault while in prison.

Zatler also alleges in his affidavit that "[o]n at least one occasion," while in protective custody, he was housed with another inmate who physically attacked him. The mere fact that an assault occurs, however, does not establish the requisite indifference to a prisoner's constitutional rights. *Cf. Gullatte*, 654 F.2d at 1012 (a constitutional right is not violated every time a prisoner is injured). Nor has Zatler attempted to establish that the assault in protective custody was caused by Wainwright's indifference, or by a breach of Wainwright's duty as Secretary of the Department of Corrections.

Accordingly, after reviewing the record, we conclude "that there is no genuine issue as to any material fact and that [Wainwright] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 (11th Cir.1981) (footnote omitted), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982).

For the foregoing reasons, the order of the district court is

AFFIRMED.

CLARK, Circuit Judge, dissenting:

Respectfully, I dissent. While deciding the case, the majority does not reach the issue. The district court also did not reach the issue, as I understand the contentions and proof of the plaintiff. The real issue is whether summary judgment should have been granted for the defendant Wainwright in light of the pleadings and genuine issues of fact present in the record.

The amended complaint alleges that the plaintiff was incarcerated in the Florida prison system at the age of 19 in the year 1978 and until the filing of the complaint he had been forcibly raped by other inmates as follows:

| Date | Institution | Location within the Institution |
| --- | --- | --- |
| 1st week in Sept. 1978 | Sumter Correc. Inst. | School |
| 1/20/79 | Union Correc. Inst. | Main Housing—West Unit |
| 2/1980 | FSP | N Wing |
| 1981 | Dade Correc. Inst. | |
| 1982 | Glades Correc. Inst. | B Dorm |
| 1982 | Glades Correc. Inst. | A Dorm |
| 1983 | Cross City Correc. Inst. | E Dorm |
| 6/20/83 | Cross City Correc. Inst. | Cell |

Amended Complaint, p. 4. As an alternative to being subjected to such abuse, plaintiff alleges that he was placed in protective custody, which custody is described in note 7 of the majority opinion. It has been plaintiff's complaint that defendant Wainwright had an affirmative duty to provide a safe environment from sexual assault and that the only alternative available to plaintiff was to obtain protective custody under conditions that amounted to evidence of deliberate indifference.

7. Zatler's affidavit states the following:
Protective custody in virtually every institution in which I have been placed, means that you are kept locked up in a cell around the clock. In many institutions you are permitted no more than one to one and [one] half hours per week of physical exercise. Bathing is restricted to no more than one or two times per week. Many of the cells in which persons are placed to seek protective custody are poorly ventilated and either cold in the winter or hot in the summer. The lighting is, in my opinion, inadequate for reading purposes. While library privileges are accorded, the number of books that one may check out in any one week is limited. Access to legal materials is further limited. In short, there is nothing to do but wait.

It may be that the plaintiff is not entitled to recover in this case. However, the pleadings, affidavit, and answers to interrogatories reflect that there is a genuine issue of fact as to the conditions under which Zatler was confined. There is no issue of fact as to Zatler having been raped since this is disclosed by the defendant's own admissions in the Record, Vol. 1, Tab 42.

The foregoing matter was not addressed by the district court nor the state in its brief. My individual research indicates that the regulation, Florida Administrative Code Rule 33–8.13(13), provides that prisoners may be placed in administrative confinement as a disciplinary punishment. However, Rule 33–3.081 defines administrative confinement and states that inmates in such confinement are not being punished. Upon a preliminary review there seems to be a question as to the conditions prescribed for administrative confinement. Since this matter was not dealt with by the state nor the district court, I do not pursue it further.

The majority opinion acknowledges at page 400 that under the evolving standards of decency that mark our maturing society, a prison inmate is entitled to be protected from the constant threat of violence and assault by other inmates. If operation of the Florida prison system results in a conscious and callous indifference to such rights, a constitutional tort has been committed.

> There is no question about the legal principle that where prison supervisors with knowledge of "a pervasive and unreasonable risk of harm" to the prisoners, fail to take reasonable remedial steps to prevent such harm, their conduct may be properly characterized as "deliberate indifference" or as "tacit authorization of the offensive acts," for which they may be held independently liable under § 1983. (citations omitted)

*Orpiano v. Johnson*, 632 F.2d 1096 (4th Cir.1980). As reflected by Secretary Wainwright's answers to interrogatories, "sexual abuse is not the subject of specific instructions." As other answers reflect, Wainwright has had knowledge of sexual abuses and the only specific assistance to offenders who have been sexually abused is the opportunity to have after-the-fact counseling by a psychologist or psychiatrist.

I conclude that the truth in this case has not been reached because of the district court's premature ruling that Wainwright was not legally responsible. The material issue of fact as to whether the protective or administrative confinement of Zatler as an alternative to being raped constituted a form of punitive response to Zatler's request for help has not been decided.

I would remand this case to the district court for trial.