[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 2, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10957
Non-Argument Calendar
_____

D. C. Docket No. 04-02495-CV-J-NW

EDWIN WILLIAMS,

Plaintiff-Appellant,

versus

LIMESTONE COUNTY, ALABAMA,
MIKE BLAKELY,
individually,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(October 2, 2006)**

Before ANDERSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Appellant Edwin Williams appeals the district court's grant of summary judgment in favor of Appellees Limestone County, Alabama, and Sheriff Mike Blakely on Williams' Eighth and Fourteenth Amendment claims brought pursuant to 42 U.S.C. § 1983.[1]  Williams asserts, on appeal, that genuine issues of material fact remain on his claims, which issues should have precluded the district court from granting summary judgment.  After review, we affirm.

## I.  BACKGROUND

As Sheriff of Limestone County, Alabama, Sheriff Mike Blakely is responsible for promulgating the policies and procedures of the Limestone County Jail with respect to the medical care of inmates.  Generally speaking, official policy mandates that inmates receive a health screening prior to booking, are monitored if need be, and can request medical services if desired.  At the time of the events forming the basis for this appeal, Limestone County had a contract with Naphcare, Inc., under which Naphcare was obligated to provide medical services for inmates in the Limestone County Jail.  In addition to associating a doctor for inmate treatment, the contract provided that two nurses would be on duty at the jail seven days a week, and at least one nurse would be on call 24 hours a day, seven days a week.  Thus, when no nurse was physically present at the jail, a nurse would

---

[1] Williams' claims against defendants Naphcare, Inc. and Barbara Longmire were settled through mediation and, consequently, do not form part of the instant appeal.

remain on call for medical emergencies. In the event of such an emergency, jail personnel were instructed to contact the nurse, who would diagnose the symptoms and, if needed, arrange for an ambulance to transport the inmate to a hospital.

From March 11, 2004, until March 17, 2004, Williams was incarcerated in the Limestone County Jail on a charge of residential building without a permit and for violating probation on a previous charge of performing construction without a license. During intake, Williams indicated to the jail nurse that he had previously experienced chest pain and shortness of breath. Around 2:15 AM on March 15, 2004, Williams experienced chest pain, was short of breath, broke out in a sweat, and had chills. His cell mates summoned help, at which time jail personnel escorted Williams out of his cell so they could take his blood pressure. The deputies, however, declined Williams' request for medical attention at this time. Around 3:00 AM, jail personnel called Barbara Longmire, the Naphcare nurse on call for medical emergencies at the time. Longmire said Williams' symptoms did not sound like a heart problem, and advised the jail staff to give him Tylenol. Deputies called Longmire two more times with Williams' blood pressure readings. After the third conversation, Longmire advised the deputies to take Williams to the hospital, to which the deputies responded that "they didn't really have enough people right then to have an escort to take him." Longmire agreed that Williams'

hospital visit could wait until after breakfast. According to Williams, jail personnel informed him that Longmire had not authorized a hospital stay.

Later that morning, Nolita Wilson, another nurse with Naphcare, arrived at the jail for her shift and checked on Williams. She noted, though Williams disputes it, that Williams claimed his problem might have been acid reflux or indigestion. Wilson decided to monitor Williams closely, telling him to return to sick call if he began to feel worse. Williams did not request further treatment, never went to see Wilson again, and was never taken to the hospital.

On March 19, 2004, Williams went to Decatur General Hospital, where he learned he had suffered a heart attack while in the Limestone County Jail. Williams had emergency heart surgery at Huntsville Hospital, and was informed that medical treatment at the time his chest pain began may have prevented his heart attack and damage to the lower third of his heart. Williams has not worked since his surgery and was awarded Social Security disability benefits with an onset date of March 19, 2004.

As a result of these events, Williams filed suit for damages against Sheriff Blakely, in his individual capacity, and Limestone County pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments. The district court granted summary judgment in favor of the defendants, and this appeal

4

followed.

## II.  STANDARD OF REVIEW

We review de novo the district court's grant of a motion for summary judgment, viewing all evidence and factual inferences in the light most favorable to the nonmoving party.  *See Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994).  Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986).  In order to defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).  The non-moving party must make a sufficient showing on each essential element of the case for which he bears the burden of proof.  *See Celotex*, 106 S. Ct. at 2552.

## III.  DISCUSSION[2]

[2] We only discuss in detail Williams' Eighth and Fourteenth Amendment claims against Sheriff Blakely.  On appeal, Williams presses the same claims against Limestone County, arguing "the [C]ounty had the responsibility to set up adequate procedures and to provide adequate training in basic response[s] to medical emergencies."  We reject Williams' claims against Limestone County, as they find no support in the record and are without merit.  Under Alabama law, Limestone County is not responsible for assuring procedures are in place for inmates to receive medical care.  *See Marsh v. Butler County*, 268 F.3d 1014, 1026 n.6 (11th Cir. 2001).  Rather, Alabama law assigns counties a "limited role in building and funding the jails." *See Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289-91 (11th Cir. 1998).  Contrary to

5

It is well-settled that to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that the failure to provide him medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution.[3] *See Estelle v. Gamble*, 97 S. Ct. 285, 292 (1976). That is, a prisoner must show his inadequate care arose from a "deliberate indifference to [his] serious medical needs." *Id.* at 291. This standard encompasses both objective and subjective components. First, the prisoner must prove an objectively serious medical need, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation and citation omitted). Second, the

Williams' conclusory allegations, nothing in the record suggests (1) Limestone County failed to provide adequate funding for medical services; or (2) Limestone County voluntarily assumed the obligation to provide adequate training through its contract with Naphcare. As a result, Limestone County is not a responsible party for any purported deliberate indifference to Williams' medical needs. The district court, therefore, did not err in granting summary judgment in Limestone County's favor on these claims.

[3] It is unclear from the record whether Williams was being held as a convicted prisoner for violating his probation, in which case the Eighth Amendment applies to him, or as a pretrial detainee on the charge of residential building without a permit, in which case the Fourteenth Amendment is applicable. *See Bell v. Wolfish*, 99 S. Ct. 1861, 1872 (1979); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994). The district court relied on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment, and not the Fourteenth Amendment's guarantee of due process. This distinction, however, does not alter our analysis because the standard for violations of the Eighth Amendment apply to pretrial detainees through the due process clause. *See Tittle*, 10 F.3d at 1539 (noting "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial"). With this in mind, we couch our analysis in Eighth Amendment terms.

prisoner must show the prison official acted with deliberate indifference to that need. To establish the requisite deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of a serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Put generally, deliberate indifference is medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

In establishing liability pursuant to § 1983, however, a prisoner cannot rely on theories of vicarious liability or respondeat superior. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115-16 (11th Cir. 2005). Section 1983 requires proof of an affirmative causal link between the official's acts or omissions and the alleged constitutional deprivation. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). The causal connection may be proven by showing the official (1) was personally involved in the acts or omissions which resulted in the constitutional deprivation; (2) established a policy or custom that resulted in the constitutional deprivation; or (3) breached a duty imposed by state or local law. *Id.* A failure to adequately train subordinates "constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train

7

amounts to deliberate indifference to the rights of persons with whom the [subordinates] come into contact.'" *Cook*, 402 F.3d at 1116 (quoting *City of Canton v. Harris*, 109 S. Ct. 1197, 1204 (1989)). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious, . . . and when the failure to train is likely to result in the violation of a constitutional right." *Belcher v. City of Foley*, 30 F.3d 1390, 1397-98 (11th Cir. 1994). In general, then, a failure to train satisfies the subjective prong of the Eighth Amendment calculus, and imposes supervisory liability on a prison official, where that failure evinces a disregard of the strong likelihood that, absent such training, prison personnel would subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 97 S. Ct. at 292.

On appeal, the parties do not dispute that Williams' severe chest pains and heart attack constituted a serious medical condition. *See Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005). Instead, the parties contest whether, under the subjective prong of the analysis, Sheriff Blakely demonstrated deliberate indifference to Williams' serious medical needs. In this regard, Williams' primary contention on appeal is that Sheriff Blakely's failure to adequately train jail personnel in emergency medical procedures constituted deliberate indifference to

8

his medical needs, which indifference caused his injury. We disagree. Nothing in the record, or in the facts as Williams asserts them, supports the conclusion that Sheriff Blakely's failure to train jail personnel in emergency medical procedures constituted deliberate indifference to his serious medical needs.

First, Williams fails to provide any evidence—or even allege—that there was a history or pattern of jail personnel's deliberate indifference to inmates' serious medical needs that would render obvious the need for additional or different medical training. In fact, Williams cites only the incident involving himself. On these facts, this is insufficient to establish Sheriff Blakely's liability for a failure to train the jail staff.[4] *See City of Oklahoma City v. Tuttle*, 105 S. Ct. 2427, 2436 (1985). Thus, we cannot say, on this record, that "the need for more or different training [was] obvious," such that by failing to ensure jail personnel were trained in emergency medical procedures, Sheriff Blakely disregarded a substantial risk that the jail staff would be deliberately indifferent to inmates' medical needs. *Belcher*, 30 F.3d at 1397-98.

Second, there is no indication from the record that Sheriff Blakely had notice

---

[4] This is not to say, of course, that under certain circumstances, the risk or likelihood of a constitutional violation cannot be "so obvious" that a failure to train constitutes deliberate indifference without prior notice. *See City of Canton*, 109 S. Ct. at 1205. We only hold that the facts of this case do not fall within that "narrow range of circumstances [in which] a plaintiff might succeed without showing a pattern of constitutional violations." *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998).

his policies, training procedures, or supervision were "likely to result in the violation of a constitutional right." *Id.* The contract between Naphcare and Limestone County provided for 24-hour care at the jail, and jail personnel were trained to call Naphcare's on-call nurse should a medical emergency arise outside of the nurses' standard work hours. Williams has neither asserted nor explained why Sheriff Blakely should have anticipated these procedures were likely to result in the jail staff's deliberate indifference to Williams', or any other inmate's, serious medical needs. Indeed, as the district court held, "[Sheriff Blakely] had reason to expect that if medical attention was needed, it would be provided under the Naphcare contract, and [Williams] has offered no evidence to the contrary." Nothing in the summary judgment record indicates Sheriff Blakely knew, or even should have known, that the failure to train jail personnel in emergency medical procedures was likely to result in a callous unresponsiveness to inmates' medical conditions. In fact, the record only permits the conclusion that Sheriff Blakely had every reason to assume medical emergencies would be handled according to the normal routine. Thus, like the district court, we cannot say that by relying solely on established procedures and Naphcare's medical services, Sheriff Blakely disregarded a substantial risk that jail personnel would be deliberately indifferent to inmates' serious medical conditions.

Finally, supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g.*, *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988). In this case, Sheriff Blakely promulgated general procedures for dealing with emergency situations, which procedures relied primarily on the medical expertise Naphcare was obligated by contract to provide. The fact that alternative procedures, such as providing jail personnel with additional medical training, might have better addressed Williams' particular needs does not show that Sheriff Blakely was deliberately indifferent to Williams' medical needs. "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 117 S. Ct. 1382, 1391 (1997). *See also Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Williams, as the district court concluded, thus failed to meet his burden on summary judgment of establishing that Sheriff Blakely's failure to train jail personnel amounted to deliberate indifference to Williams' serious medical condition. Accordingly, we affirm the district court's grant of summary judgment in favor of Sheriff Blakely.[5]

---

[5] Because Williams has failed to establish the deliberate indifference integral to his Eighth and Fourteenth Amendment claims, we need not address the issue of whether Sheriff Blakely is entitled to qualified immunity. *See Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001) (noting "[i]f no constitutional right would have been violated . . . there is no necessity for further

11

## IV. CONCLUSION

For the foregoing reasons, we affirm the well-reasoned order of the district court.

AFFIRMED.

---

inquiries concerning qualified immunity").