WILLIAM PRYOR, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority opinion that the search of the barbershop exceeded the scope of a reasonable administrative inspection and that the barbers presented evidence that Corporal Keith Vidler, as the supervisor, violated their clearly established constitutional rights. I also agree that Brian Berry presented evidence that Deputy Travis Leslie, who handcuffed Berry and patted him down, violated his clearly established constitutional rights. But Edwyn Durant, Reginald Trammon, and Jermario Anderson presented no evidence that Deputy Travis Leslie violated their constitutional rights. Even though the inspection of the barbershop appeared to be “a scene right out of a Hollywood movie” (Majority Op. at 1146), we cannot bend the law to resolve this appeal with a feel-good ending from a box-office hit. The law entitles Leslie to qualified immunity against any barber who failed to present evidence that Leslie personally deprived him of a clearly established constitutional right. Durant, Trammon, and Anderson failed to prove an affirmative causal connection between their specific injuries and Leslie’s conduct. For that reason, I respectfully concur in part and dissent in part.
I agree with the majority that, to establish “an ‘affirmative causal connection’ between the official and the alleged deprivation,” the barbers “must show that the official was personally involved in the acts that resulted in the constitutional deprivation.” (Majority Op. at 1154 (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir.1986)).) And counsel for the barbers acknowledged at oral argument that our precedents “require” us to compare “each officer’s actions” to the injury suffered by “each individual plaintiff.” But, after reciting the correct governing law, the majority fails to consider whether each barber proved a causal connection between his specific injury and Deputy Leslie’s conduct.
Durant, Trammon, and Anderson failed to present evidence that Leslie personally violated their constitutional rights. Durant testified that a male deputy wearing a uniform searched his workstation and ordered him to sit down, but he failed to identify that male deputy as Leslie. Although Leslie wore a uniform, more than one uniformed, male deputy participated in the search. Trammon testified that two female deputies handcuffed and searched him. Trammon also testified that a female inspector and another officer searched his workstation, but he failed to identify the other officer as Leslie. And counsel for the barbers conceded at oral argument that “there is no evidence that [Leslie] did anything personally to ... Tramm[on].” Finally, Anderson testified that a short, male deputy wearing a mask and bulletproof vest handcuffed him and searched his workstation. But Leslie was not wearing a bulletproof vest and was not wearing a mask. And, despite having seen Leslie handcuff Berry, none of the barbers testified that the officer who searched him was the same officer who handcuffed Berry.
The majority asserts that “[t]he record clearly supports a finding that” Leslie was an “active and full participante ] in the unconstitutional intrusion” because Leslie “placed [Brian Berry] in handcuffs and helped to execute the unconstitutional search of the shop and barbering stations,” *1162 {id. at 1155), but “the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation,” Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir.1995). We must recall that the barbers sued Leslie in his individual capacity for money damages. See Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). To be sure, each barber suffered a violation of his constitutional rights, and each barber has a valid claim against any officer who participated in that barber’s injury. But the other barbers cannot piggyback on the violation of Berry’s constitutional rights to obtain damages from Leslie’s pocket for violations caused by other officers. And Leslie’s general “help[ ] ... executing]” the search, (Majority Op. at 1154-55), is not sufficient to deprive him of qualified immunity, see Zatler, 802 F.2d at 401; see also Rizzo v. Goode, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976) (dismissing a claim under section 1983 because the plaintiffs proved only that “[[Individual police officers not named as parties to the action were found to have violated the constitutional rights of particular individuals, only a few of whom were parties plaintiff’ and thus there was no “affirmative link” between the actual defendants and the plaintiffs) (emphasis omitted); cf. Brown v. City of Huntsville, Ala., 608 F.3d 724, 737 (11th Cir.2010) (“Merely being present ... at the scene is not enough.”). Unlike Berry, Durant, Trammon, and Anderson failed to present any evidence that Deputy Leslie participated in any way in inflicting the constitutional injuries that they suffered.
The majority boasts that “it is difficult to imagine a straighter application of binding precedent than Swint to the facts of this case,” but its reading of Swint is far from “a straight[] application of binding precedent.” (Majority Op. at 1155.) The majority points out that “nothing in the facts set forth in Swint identifies what [the officer] or [the police chief] did directly or particularly to any of the plaintiffs” and yet the Swint court ruled “that qualified immunity had to be denied to all three officers with respect to all four plaintiffs because, among other reasons, ‘no reasonable officer in the defendants’ position could have believed that these were lawful, warrantless administrative searches.’ ” (Majority Op. at 1156 (quoting Swint, 51 F.3d at 999).) The majority construes this lack of discussion as a binding command not to engage in a particularized analysis of each plaintiffs injury and each defendant’s conduct. According to that reading, the four plaintiffs in Swint, plus every other employee and patron, would have a valid claim against not only the police chief, sheriff, and officer, but also all “30 to 40 officers” who participated in the raid. (Majority Op. at 1156.) But Swint holds nothing of the kind. At the very least, the police chief in Swint was a supervisor who, like Vidler, could be liable for the violations of the plaintiffs’ constitutional rights even without personally participating in the violations, so the court would have no reason to analyze his conduct as related to each plaintiffs injury. And we can only speculate why the court did not discuss the officer’s role in each plaintiffs injury— perhaps the officer failed to raise the defense. Our decision in Swint did not consider at all the argument raised by Deputy Leslie in this appeal—whether an officer can be liable for violations of clearly established constitutional rights that he did not commit or that were not pursuant to a policy that he approved.
Let’s be clear about what the majority reads Swint to require. Under the majority’s reading, every officer at the scene of *1163 an invalid search is hable for every violation of every plaintiffs rights. Even those officers who do not so much as look in the direction of a plaintiff, or so much as breathe on a plaintiffs property, or have any supervisory responsibility over the offending officers, will nevertheless be liable to every plaintiff due to the officers’ “mere personal participation” when they “should have known that participation in such a ... search clearly violated the Fourth Amendment.” (Majority Op. at 1158.) And so the majority holds Deputy Leslie is subject to liability, despite no record evidence that Leslie touched Durant, Tram-mon, or Anderson, no record evidence that Leslie touched any property belonging to Durant, Trammon, or Anderson, and no record evidence that Leslie supervised any of the officers who searched or seized property of Durant, Trammon, and Anderson.
Let’s be just as clear that this is not what Swint requires. Swint proceeded, in relevant part, by addressing only three arguments raised by the officers in that appeal. First, the “[defendants argued” that “the search ... was pursuant to probable cause and exigent circumstances.” 51 F.3d at 996 (alteration and internal quotation marks omitted). As to probable cause, the officers argued that both general information about the club and the “drug transactions that preceded each of the raids” provided probable cause for the search. Id. at 997. After recounting the police chiefs and sheriffs testimony, we ruled that the general information about the club did not amount to arguable probable cause and that “[pjrobable cause to arrest one suspect ... did not give the officers carte blanche to seize everyone who happened to be in the Club when the two raids took place.” Id. And we explained that “[w]e need not address defendants’ exigent circumstances argument,” because we had already concluded that the officers lacked probable cause and “it is well-settled that ... warrantless searches and seizures require that both probable cause and exigent circumstances exist.” Id. at 998 (alteration and internal quotation marks omitted). Second, the “[djefen-dants argue[d]” that “the two raids were administrative searches of the Club to which the Club owners had previously consented.” Id. We ruled that the facts “simply [did] not support an administrative search theory” because the raids involved a “massive show of force and excessive intrusion,” and “the officers did not simply search for violations of the liquor laws.” Id. at 998-99. Third, “Sheriff Morgan advanee[d] another argument on the question of ... whether he engaged in conduct violative of the rights established by clearly-established law.” Id. at 999 (emphasis added) (alteration and internal quotation marks omitted). As to this argument raised only by the sheriff, we explained that, “although § 1983 does require proof of an affirmative causal connection between the official’s acts or omissions and the alleged constitutional deprivation, personal participation is only one of several ways to establish the requisite causal connection.” Id. (alterations and internal quotation marks omitted). We explained that we also may impose liability “due to the existence of an improper policy.” Id. (internal quotation mark omitted). We then considered the information known to the sheriff and ruled that he had authorized an improper policy. Id.
To be sure, Swint clearly established that the information known to the officers about the club does not amount to arguable probable cause for a raid; that a single drug transaction does not amount to arguable probable cause to search an entire establishment; that massive shows of force amount to unreasonable administrative inspections; and that owners and patrons *1164 can establish an affirmative causal connection between the violations of their constitutional rights and a supervisor, like the sheriff, if the supervisor approved a policy that allowed the violations. But Swint said nothing at all about—much less clearly established—whether every person present during an unreasonable search has a valid claim against every officer who participated in that search.
I part ways with the majority because it conflates two distinct questions: whether a search violates clearly established law, and who can sue whom on the basis of that violation. The majority relies on Swint’s conclusion that the officers in Swint knew the planned raid violated “clearly established Fourth Amendment rights,” to draw the unrelated conclusion that mere participation in such a raid is enough to expose any officer to liability to any plaintiff. (Majority Op. at 1158-59 (quoting Swint, 51 F.3d at 999-1000).) But the central issue in Swint was whether the officers would have been on notice that the raid violated clearly established Fourth Amendment rights. The answer to that question does not establish whose Fourth Amendment rights they violated. Perhaps for that reason, neither the district court in its order nor the barbers in their brief even cite to Swint at all. That is, the decision that the majority cites as clearly establishing what these individual officers should have known was never even mentioned by either the learned district judge or the plaintiffs’ own counsel.
Because Durant, Trammon, and Anderson failed to prove a causal link between Deputy Leslie’s conduct and their constitutional deprivations, I respectfully concur in part and dissent in part. I would reverse the denial of summary judgment for the claims brought by Anderson, Durant, and Trammon against Leslie and render partial summary judgment in his favor.