[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-14538
Non-Argument Calendar

————————————————

D.C. Docket No. 3:16-cv-00806-BJD-PDB

SHURI NORRIS,
TAIFA MCCRAY,

Plaintiffs - Appellees,

versus

MIKE WILLIAMS,
in his official capacity as Sheriff of the Consolidated City of Jacksonville, Florida,

Defendant,

DETECTIVE N. D. PRESCOTT,
individually,
DETECTIVE P. CROSS,
individually,
DETECTIVE D. WILL,
individually,
DETECTIVE J. WEBER,
individually,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 12, 2019)

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

In September 2015, a team of officers from the Jacksonville Sheriff's Office (JSO) performed a destructive search of Shuri Norris' home pursuant to a valid warrant. The search reportedly resulted in more than $20,000 worth of damage. Norris and her son, Taifa McCray, sued four of the participating officers—Detectives Paul Cross, Nelson Prescott, John Weber, and David Will (collectively, Defendants)—in their individual capacities, alleging Fourth Amendment violations.[1] Defendants moved for summary judgment, claiming that they were entitled to qualified immunity. The district court denied the motion. Defendants appealed. Because the district court failed to analyze each Defendant's alleged actions individually when making the qualified immunity determination, we reverse and remand.

## I.    Factual and Procedural Background

_____

[1] Norris and McCray also sued Detectives L.L. Coyle and W.H. Irvin in their individual capacity, and Sheriff Mike Williams in his official capacity. Moreover, Norris and McCray brought state law trespass claims against the city and a 42 U.S.C. § 1983 claim against the city. None of these individuals or claims are at issue in this appeal.

On September 3, 2015, Detective Prescott applied for a warrant to search Norris and McCray's home.  According to the warrant application, the home was "being used by an unknown black male and other unknown person or persons for the purpose of violating the laws relating to drug abuse to wit: possessing and/or concealing controlled substance described as: powder cocaine . . . ."  Prescott noted that there were several elevated risks associated with the potential search.  Specifically, Prescott checked the following elevated risk factors on the Search Warrant Request Checklist: (1) firearms known to be readily accessibly are at the target location; (2) suspect has a history involving firearms and/or violent crimes; and (3) a forced entry breach is planned.  Given the risks, the Defendants determined (and noted on the warrant application) that a Special Weapons and Tactics (SWAT) team should be involved in the execution of the warrant.  A judge signed the warrant the same day.

On September 4, a team of approximately twenty JSO officers, including Defendants, executed the warrant.  When the team arrived at the home, Norris was at work, but McCray was in the living room with friends.  Using an intercom, an officer ordered all occupants of the home to exit the dwelling.  According to McCray, before the occupants could comply, Defendants began breaking

3

windows.[2] Defendants then threw a distraction device known as a flash bang through the window, which caused McCray and the others to retreat into his room.

Defendants and other JSO officers entered the house and ordered McCray and his friends to exit McCray's bedroom.[3] They complied. With weapons drawn, Defendants then escorted McCray and his friends out of the house. The team of officers, allegedly including Defendants, continued searching the house. They eventually found a small bag of marijuana in McCray's closet.

When Norris returned home, she discovered that her house had been raided and significant property had been destroyed. The property damage included several broken windows, three splintered doors leading into the home, a broken refrigerator door, a broken oven door, a smashed television, a shattered tablet computer, and a cracked toilet seat. Norris also reported missing items, including Versace sunglasses and gold jewelry.

Norris and McCray brought § 1983 actions against Defendants. Defendants moved for summary judgment. The district court determined that Defendants were not entitled to qualified immunity, and thus denied their motion for summary judgment.

---

[2] Defendants broke the windows pursuant to a procedure referred to as a "break and rake." An officer performs a "break and rake" by breaking a window and then using a rake to remove residual glass shards. An officer will employ this tactic so that another officer can get a visual of the inside of the home.

[3] Cross, Weber, and Will maintain that they never entered the house. Prescott admits to entering the house but maintains that he did not do so until after the search had been completed.

4

## II.    Standard of Review

We review orders denying summary judgment based on qualified immunity de novo.  *Taylor v. Hughes*, 920 F.3d 729 (11th Cir. 2019).

## III.    Discussion

The purpose of qualified immunity is to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  "Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'"  *Id.* (quoting *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).

To be entitled to qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quotation omitted).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Ferraro*, 284 F.3d at 1194.

"Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity claim, considering

only the actions and omissions in which that particular defendant engaged."
*Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (quoting *Zatler v. Wainwright*,
802 F.2d 397, 401 (11th Cir. 1986) (per curiam)).  Courts therefore must carefully
"evaluate a given defendant's qualified-immunity claim, considering only the
actions and omissions in which that particular defendant engaged."  *Id.*

The district court here failed to individually analyze each Defendant's
alleged actions before denying qualified immunity.  Instead, the court referred to
Defendants collectively throughout its analysis and assumed that each Defendant
participated in each alleged action.  Moreover, the district court did not distinguish
Defendants from the approximately twenty other officers at the scene.  Because
courts are required to perform an independent qualified immunity analysis for each
defendant, *id.*, we reverse the district court's denial of summary judgment and
remand for the district court to conduct an independent assessment of each
Defendant's actions to determine whether each Defendant is entitled to qualified
immunity.

**REVERSED AND REMANDED.**